UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LISA HELEN STORY,                                          Civ. No. 3:15-cv-00194-AC

                              Plaintiff,                   OPINION AND ORDER

          v.

MIDLAND FUNDING LLC AKA
MIDLAND FUNDING NCC-2 CORP.;
MIDLAND CREDIT MANAGEMENT
INC.; and SUTTELL, HAMMER &
WHITE, P.S.,

                              Defendants.
_____

ACOSTA, Magistrate Judge:

*Introduction*

  Plaintiff, Lisa Helen Story ("Story"), brings claims under the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, against defendants Suttell, Hammer &

White, P.S. ("Suttell"); Midland Funding, LLC ("MFL"); and Midland Credit Management, Inc.

("MCM") (collectively, "Defendants").   Story's claims arise from Defendants' attempts to

collect a debt that Story claims was fraudulently incurred by a third party.

Suttell moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that the pleadings show Story's complaint fails to state a claim against Suttell as a matter of law. MFL and MCM (collectively, "Midland Defendants") "join in and adopt the arguments" presented in Suttell's motion and argue that "to the extent [Story] seeks to hold MFL and/or MCM liable on any of the claims moved against, MFL and MCM likewise are entitled to judgment in their favor on those claims for the same reasons articulated in Suttell's motion."

The court grants Suttell's Motion for Judgment on the Pleadings because the conduct alleged in the pleadings does not state a claim against Suttell. The court rejects the Midland Defendants' joinder in Suttell's motion because Story's claims against the Midland Defendants are based on an entirely different set of factual circumstances from her claims against Suttell, and Suttell's arguments therefore do not apply to the Midland Defendants.

## *Background*

On January 14, 2014, Suttell sent Story a letter as an attempt to collect a $1,002.23 debt incurred in her name. (Compl. ¶ 14; Answer ¶ 14, Ex. 1.) The letter stated the amount due, the name of the original creditor, and the date of the last payment. (Answer Ex. 1.) The letter also alerted Story that if she failed to dispute the debt within thirty days after receiving the letter, Suttell would assume the debt was valid. (*Id.*) Finally, the letter explained that if Story notified Suttell that the debt was disputed within thirty days of her receipt of the letter, Suttell would verify the debt before pursuing collection. (*Id.*) After receiving no response from Story, Suttell sent Story a second letter on February 19, 2014, offering to settle the account for $751.67. (Compl. ¶ 14; Answer ¶ 14, Ex. 2.) Story did not respond to either letter. On March 18, 2014, Suttell filed a collection action against Story in Washington County. (Compl. ¶ 15; Answer ¶ 15, Ex. 3.)

On March 29, 2014, Story called Experian to dispute the account on her credit report. (Compl. ¶ 17.)  Then, in a letter dated April 19, 2014, Story disputed the debt with Suttell by asserting that her identity had been stolen.  (Compl. ¶ 18; Answer ¶ 18, Ex. 4.)  Suttell responded in a letter dated April 23, 2014, asking Story to complete an Identity Theft Victim's Complaint and Affidavit ("Affidavit").[1]  (Compl. ¶ 19; Answer ¶ 19, Ex. 5, at 1.)  In that letter, Suttell told Story that it would assume the debt was valid and proceed in collection if it did not receive the completed and signed Affidavit within thirty days.  (Answer Ex. 5, at 1.)  The Affidavit form included a directive to obtain an accompanying law enforcement report, and it required a notarized signature.  (Answer Ex. 5, at 6-7.)

Story filled out the Affidavit and returned it to Suttell on May 21, 2014.  (Compl. ¶ 19.) Suttell responded on June 11, 2014, with a letter explaining that the Affidavit was invalid because: (1) it was not notarized; and (2) the attached police report was not specific to the account in question.  (Compl. ¶ 20; Answer Ex. 7.)  Suttell requested that Story complete and return a new Affidavit within twenty-one days.  (Compl. ¶ 20; Answer ¶ 20, Ex. 7.)   In July 2014, Story returned the Affidavit to Suttell with a notarized signature and Hillsboro Police Department Incident Report.  (Compl. ¶ 21; Answer ¶ 21.)  Story paid $10.00 to obtain a copy of the police report.  (Compl. ¶ 21.)

After receiving Story's complete Affidavit and the police report, Suttell dismissed its lawsuit against her on August 22, 2014.  (Compl. ¶ 21.)  Story's Complaint does not allege any contact between Story and Suttell after the suit was dismissed.

---

[1] The Affidavit is a generic form, available on the Federal Trade Commission's website. *See* FED. TRADE COMM'N, IDENTITY THEFT VICTIM'S COMPLAINT AND AFFIDAVIT, https://www.consumer.ftc. gov/articles/pdf-0094-identity-theft-affidavit.pdf.

MCM continued collection efforts against Story after Suttell dismissed its lawsuit. On September 4, 2014, MCM sent Story a collection letter that listed the amount due as $1,287.05 instead of the original $1,002.23. (Compl. ¶ 22.) On October 15, 2014, MCM sent Story a second collection letter, this time seeking $1,304.33. (Compl. ¶ 23.) On December 1 and 4, 2014, MCM sent Story two more collection letters, now seeking $1,324.49 and requesting documentation of Story's dispute and supporting records. (Compl. ¶ 24.) On December 10, 2014, MCM sent Story a letter indicating it had closed the account. (Compl. ¶ 25.)

On February 3, 2014, Story filed this lawsuit, alleging FDCPA violations against Suttell, MFL, and MCM. Story claims "Defendants['] conduct in bringing an unlawful debt collection lawsuit against [Story] and the further collection attempts when the lawsuit was dismissed, disturbed [Story] and caused anxiety, sleeplessness, nervousness, anger, embarrassment, humiliation, and frustration and emotional distress." (Compl. ¶ 27.)

Both of Story's claims against Suttell are contained in Count 3. Story alleges Suttell threatened to collect on a debt that it "knew or should have known was not [Story's]" and that such conduct "is a violation of at least one, if not more, provisions of the [FDCPA], 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, and 1692f(1)." (Compl. ¶ 29.) She also claims "Suttell's investigation of [Story's] dispute unreasonabl[y] put the burden on [Story] to prove the account was not hers and caused her to incur fees such as the costs of the police reports" in violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, 1692f(1), and 1692f(5). (Compl. ¶ 30.)

In Count 2, Story alleges the Midland Defendants' "refusal to desist collecting on the debt when they knew or should have known that [Story did not owe the debt] violates at least one, if not more, provisions of the [FDCPA], 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5),

1692e(9), 1692e(10), 1692f, and 1692f(1)."  (Compl. ¶ 31.)  In Count 3, she contends that the Midland Defendants' "attempt to collect an amount that was not due by overstating or misrepresenting the amount of the debt by adding interest that was not due or that defendants knew as not collectible . . . violated at least one" of the following FDCPA provisions: 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, and 1692f(1).  (Compl. 6.)

*Legal Standard*

Because Rule 12(c) and Federal Rule of Civil Procedure 12(b)(6) are "functionally identical," courts must apply "the same standard of review" to both motions.  *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.5 (9th Cir. 2011). Accordingly, judgment on the pleadings is appropriate when, accepting all factual allegations in the complaint as true, the moving party is entitled to judgment as a matter of law.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

A pleading must contain "enough [factual allegations] to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The proposition that a court must accept all allegations in a complaint does not force a court to accept as true allegations which are mere labels or legal conclusions.  *Id.*  Facts do not need to be detailed, and the "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.* at 555-56.  As long as the allegations of the non-moving party are plausible and a reasonable inference can be drawn, the motion must be denied.  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The court's review is limited to the face of the pleading, any documents referenced in the pleading, and those matters which the court may properly take judicial notice.  *Schwartz v.*

*KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  If matters outside the pleadings are considered, the motion shall be treated as one for summary judgment.  FED. R. CIV. P. 12(d).

*Discussion*

Story brings FDCPA claims against Suttell and the Midland Defendants based on their attempts to collect the debt in Story's name.  Story's claims against Suttell are predicated on her contention that Suttell: (1) threatened to collect on a debt that it "knew or should have known" was not Story's; and (2) investigated Story's dispute in a way that "unreasonabl[y] put the burden on [Story] to prove the account was not hers and caused her to incur fees such as the costs of police reports."  (Compl. ¶¶ 29, 31.)  Story's claims against the Midland Defendants are based on their alleged: (1) "refusal to desist collecting on the debt when they knew or should have known" that Story did not owe the debt; and (2) "attempt to collect an amount that was not due by overstating or misrepresenting the amount of the debt by adding interest that was not due or that defendants knew was not collectible."  (Compl. at 6.)  Each of Story's claims lists the same eight FDCPA provisions: §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, and 1692f(1).  Her second claim against Suttell also alleges a violation of § 1692f(5).

I.  Relevant FDCPA Provisions

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Thus, "Congress designed the [FDCPA] to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid."  *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1998) (internal quotation marks omitted).

Section 1692d prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  The non-exhaustive list of conduct proscribed by this section includes: threatening or using violence; using obscene or profane language; publishing a list of consumers who failed to pay debts; advertising the sale of any debt to coerce payment of the debt; and using the telephone to annoy, abuse, or harass a person at the called number or without disclosing the caller's identity.  *Id.*

Section 1692e generally prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Subsections one through sixteen provide a nonexhaustive list of prohibited conduct.  Story alleges that Defendants violated subsections (2), (5), (9), and (10), which prohibit the following acts:

(2) The false representation of—

    (A) the character, amount, or legal status of any debt; or

    (B) any services rendered or compensation which may be lawfully received
        by any debt collector for the collection of a debt.

. . . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . . .

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

Section 1692f prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." Section 1692f(1) specifically prohibits the "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Section 1692f(5) prohibits debt collectors from charging any person for communications by concealing the true purpose of the communication, for example through collect telephone calls or telegram fees.

Alleged violations of these provisions are evaluated from the standpoint of the "least sophisticated debtor." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007). That standard requires an "objective analysis" that considers whether "the least sophisticated debtor would 'likely be misled' by a communication." *Id.* (quoting *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). The least sophisticated debtor standard requires more than "simply examining whether particular language would deceive or mislead a reasonable debtor" because it is "designed to protect consumers of below average sophistication or intelligence, or those who are uninformed or naive." *Gonzales v. Arrow Fin. Servs.*, LLC, 660 F.3d 1055, 1061-62 (9th Cir. 2011) (internal quotation marks and citations omitted). "At the same time, the standard 'preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care.'" *Id.* at 1062 (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).

II.  Story's Claims Against Suttell.

Story claims Suttell violated these FDCPA provisions when it: (1) "threat[ened] to collect on a debt that [it] knew or should have known was not Story's"; and (2) "unreasonabl[y] put the burden on [Story] to prove the account was not hers." (Compl. ¶¶ 29, 30.)  With respect to

Suttell, Story's complaint alleges the following conduct: (1) Suttell sent Story an initial collection letter, notifying her of her rights under the FDCPA; (2) after receiving no response from Story disputing the debt, Suttell sent Story a second letter, this time offering to settle the debt; (3) after again receiving no response from Story, Suttell filed a collection lawsuit against her; (4) Suttell responded within five days to Story's dispute of the debt, requesting that Story support her identity-theft allegations by filling out the Affidavit; (5) after Story failed to notarize the Affidavit or attach the relevant police report as requested, Suttell sent Story a second letter asking that she complete and return the Affidavit, notarized and with the correct police report; and (6) after receiving the requested materials, Suttell voluntarily dismissed its suit against her.

   A. *Story has failed to establish that Suttell's continued collection efforts were prohibited by the FDCPA.*

The claims in ¶ 29 of Story's Complaint are based on her assertion that Suttell knew or should have known the debt was not Story's. This argument is not supported by the FDCPA. First, the FDCPA permits continued collection efforts when debt collectors comply with the validation requirements contained in 15 U.S.C. § 1692g(a), as Suttell did, and the consumer fails to timely dispute the debt, as Story did. As discussed further below, nothing in §§ 1692d, 1692e, or 1692f alters that conclusion. Even if, under those sections, attempting to collect a debt that the debt collector knows or should know is not the consumer's did state a claim, Story's allegation that Suttell knew or should have known the debt was not hers is nothing more than an unsupported legal conclusion. Accordingly, the court grants Suttell's Motion for Judgment on the Pleadings as to the claims contained in ¶ 29 of Story's Complaint.

   1. Section 1692g

A debt collector is entitled to assume a debt is valid and to proceed with collection activities where, as here: (1) the debt collector has complied with the FDCPA's validation of

debt notice requirements under § 1692g(a); and (2) the consumer has failed to timely dispute the debt. 15 U.S.C. § 1692g(b); *Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999) ("If no written demand is made, 'the collector may assume the debt to be valid.'" (quoting *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996))).

To comply with § 1692g, a debt collector must provide the consumer with written notice within five days of its initial communication with the consumer, containing specific information about the debt and explaining the consumer's right to validation. Such notice must provide the following information:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Suttell's January 14, 2014 letter to Story fully satisfied Suttell's obligations under § 1692g(a) because it contained: (1) the amount of the debt ($1,002.23) and the name of the original creditor ("CREDIT ONE BANK, N.A."); (2) a statement that Suttell would assume the debt was valid if Story failed to dispute the debt within thirty days; (3) a statement that if Story notified Suttell in writing within thirty days that the debt was disputed, Suttell would obtain

verification of the debt and mail such verification to Story; and (4) a statement that upon Story's request within the thirty-day period, Suttell would provide Story with the name and address of the original creditor.  (Answer Ex. 1.)

Story does not allege that she responded to Suttell's January 14, 2014 letter or otherwise disputed the debt within thirty days of receiving Suttell's validation notice.  The first time Story contacted Suttell regarding the debt was on April 19, 2014, well after the expiration of the thirty-day period during which Suttell would have been obligated to cease its collection efforts. (Compl. ¶ 18; Answer ¶ 18, Ex. 4.)

A customer who fails to dispute a debt within the thirty-day period prescribed in § 1692g is not entitled to the cessation of debt collection activities.  *Richardson v. Valley Credit Serv. Inc.*, No. 6:13-cv-2271-TC, 2014 WL 3897564, at *3 (D. Or. Aug. 6, 2014) ("[P]laintiff was not entitled to cessation of debt collection activities because she did not dispute the debts within 30 days of the initial notice."); *Basgire v. Resyrgebt Caoutak Servs., L.P.*, 452 F. App'x 522, 524 (5th Cir. 2011) (unpublished) (affirming dismissal of the plaintiff's claim based on the defendant's failure to cease collection activities because the plaintiff "did not allege she notified [the defendant] of the dispute within the 30-day period established by the FDCPA"); *Phillips v. NCO Fin. Sys., Inc.*, No. 12-CV-15482, 2014 WL 1405217, at *6 (E.D. Mich. Apr. 11, 2014) ("Plaintiff's late request 'did not trigger any obligation on the part of [defendant] to verify the debt.'  NCO was entitled to attempt to collect the debt following the expiration of the 30 day period." (quoting *Mahon*, 171 F.3d at 1203.)).  Because Suttell complied with its obligations under § 1692g and Story failed to dispute the debt within the thirty-day period, Suttell was entitled to assume the validity of the debt and had no obligation to cease collection efforts.

Story contends that "[i]f Suttell was entitled to assume the debt was valid then that assumption protects Suttell [only] up until the moment that plaintiff informs it otherwise," (Pl.'s Resp. 2), but she cites no legal authority for that proposition. Such an argument is untenable: under the FDCPA provisions and cases cited above, Suttell was entitled to assume the debt was valid and had no obligation to cease collection efforts once the thirty-day validation period had expired.

### 2. Sections 1692g, 1692e, and 1692f

Sections 1692g, 1692e, and 1692f imposed no independent obligation upon Suttell to discontinue its collection efforts. Story challenges Suttell's reliance on *Mahon* and other cases decided under § 1692g by arguing that Story's letter disputing the debt "did not trigger a duty to stop collecting pursuant to . . . § 1692g. It triggered a duty to stop collecting pursuant to [§§] 1692e, d, and f." (Pl.'s Resp. 5-6.) Yet Story provides no authority for that assertion, and nothing in the text of those statutes or the case-law interpreting them supports her argument.

Section 1692d prohibits, in general terms, conduct that harasses, oppresses, or abuses the consumer. 15 U.S.C. § 1692d. Specifically prohibited conduct includes violence, obscenities, coercion, and repeated phone calls. *Id.* Story does not identify which of her factual assertions provide the basis for her § 1692d allegation, aside from claiming Suttell violated multiple FDCPA provisions when it "threat[ened] to collect on a debt that [it] knew or should have known was not Story's." (Compl. ¶¶ 29.)

Suttell sent Story four letters over a six-month period, two of which were in direct response to Story's belated dispute. The first letter complied with § 1692g(a)'s notification requirements, and each of the subsequent communications made clear that Suttell was a debt collector. On these facts, Suttell's collection efforts were not abusive, harassing, or oppressive.

Moreover, Story's assertion that Suttell knew or should have known the debt was not incurred by Story is an unsupported and conclusory allegation, which the court may not accept as true. Because nothing in the letters can reasonably be construed as harassment, oppression, or abuse, even viewed through the eyes of the least sophisticated debtor, Story fails to state a § 1692d claim against Suttell on the basis of its continued collection efforts.

Section 1692e prohibits the use of "false, deceptive, or misleading representations" in connection with the collection of any debt. Story specifically alleges violations of § 1692e(2)(A) and 1692e(10), which prohibit, respectively: (1) falsely representing the "character, amount, or legal status of any debt;" and (2) using "any false representation or deceptive means to collect or attempt to collect any debt." Again, other than claiming that Suttell attempted to collect a debt that it "knew or should have known" was not Story's, Story does not specify which of Suttell's alleged conduct forms the basis for her § 1692e claims, and she provides no support for her assertion that Suttell's conduct violated § 1692e.

All of Story's § 1692e claims appear to be based on the premise that attempting to collect a debt that the consumer does not actually owe is false, misleading, or deceptive, but the structure of the FDCPA and the case law interpreting it do not support that legal theory. *See, e.g.*, *Bleich v. Revenue Maximization Grp., Inc.*, 233 F. Supp. 2d 496, 501 (E.D.N.Y. 2002) ("[W]here a debt collector has included appropriate language regarding the FDCPA debt validation procedure, the allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt."); *Garcia v. Gurstell Chargo, P.A.*, 2:12-cv-1930 JWS, 2013 WL 4478919, at *5 (D. Ariz. Aug. 21, 2013) (rejecting a consumer's § 1692e claims, which were based on the allegation that a debt collector's communications requesting an identity theft affidavit after the consumer had

already provided one "falsely represented that [the consumer] owed a debt that did not belong to him," because the character and amount of the debt were undisputed and the debt collector did not misrepresent the legal status of the debt by asking the consumer to provide information to verify her dispute); *Collins v. Asset Acceptance, LLC*, No. 09 C 583, 2010 WL 3245072 (N.D. Ill. Aug. 13, 2010) (rejecting a consumer's argument that a debt collector violated § 1692e when it requested information substantiating the consumer's identity-theft allegation and warned that it would consider the dispute resolved if such documentation as not provided); *Taylor v. Midland Credit Management, Inc.*, No. 1:07-cv-582, 2008 WL 544548 (W.D. Mich. Feb. 26, 2008) ("Even if Taylor is correct in his assertion that he does not owe the Debt, his assertion that he is being pursued for a debt he does not owe is not sufficient in and of itself to make out a claim of false or misleading representations under § 1692e."); *Daniel v. Asset Acceptance L.L.C.*, No. 06-15600, 2007 WL 3124640, at *5 (E.D. Mich. Oct. 23, 2007) (relying on Bleich to dismiss the consumer's § 1692e claims because they were premised solely on the allegation that consumer did not owe the debt).

As explained above, the FDCPA sets forth a clear procedure for consumers to dispute the validity of a debt, and Suttell clearly communicated that procedure to Story in its first letter to her. Because Story failed to dispute the debt according to the FDCPA procedure for doing so, Suttell was entitled to assume the debt was valid; and its communications regarding that debt are not deemed false, misleading, or deceptive simply because the alleged debt was incurred through identity theft. Story does not dispute the amount ($1,002.23) or character (debt incurred through a credit card) of the debt, and none of Suttell's communications with Story misrepresented the legal status of the debt. Rather, the communications provided Story with an opportunity to dispute the debt, offered to settle for less than the stated amount, and directly responded to

Story's identity-theft allegations.  Thus, Story does not adequately plead her § 1692e(2)(A) claim against Suttell, nor does she demonstrate that the communications contained false representations or employed deceptive means to collect the debt in violation of § 1692e(10).

Story also alleges violations of §§ 1692e(2)(B) (misrepresentation of services rendered), 1692e(5) (threats to take action that cannot be legally taken), and 1692e(9) (simulation of court documents), none of which applies to the conduct alleged in the complaint.  None of Suttell's communications with Story made any representation about services rendered or threatened to take illegal action, and each communication included a clear statement that Suttell is a debt collector.

Story also fails to state a claim under § 1692f.  Section 1692f prohibits, in general terms, debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt."  Section 1692f(1) specifically prohibits the "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Section 1692f(5) prohibits debt collectors from charging any person for communications by concealing the true purpose of the communication.

Story has cited no authority to support her allegation that Suttell's continued attempts to collect the debt were unfair or unconscionable, and the court has found none.  Indeed, as established above, Suttell complied with all of the requirements in § 1692g, which is aimed at preventing such behavior.  Story has failed to state a claim under § 1692f(1) because the amount of the debt that Suttell attempted to collect is undisputed.  *Cf. Taylor v. Midland Credit Mgmt., Inc.*, No. 1:07-cv-582, 2008 WL 544548, at *4 (W.D. Mich. Feb. 26, 2008) ("[W]here the amount being collected by the collection agency was not different than the amount owed,

§ 1692f(1) was inapplicable to the plaintiff's claim that the collection agency was attempting to collect the debt from the wrong person."). Likewise, Story's § 1692f(5) claim fails because there is no allegation that Suttell charged Story for any of its communications.

Accepting all of the factual allegations in Story's complaint as true, Story has not raised her right to relief above the speculative level. She has not cited any authority to support her allegation that Story's continued collection efforts violated §§ 1692d, 1692e, or 1692f. In addition, the apparent basis for Story's claim — her assertion that Suttell "knew or should have known" that Story did not owe the debt — is not entitled to the assumption of truth.

         3.      Suttell's Alleged Knowledge that the Debt Was Not Story's

Story's complaint alleges that Suttell "knew or should have known" that the debt was not Story's, but none of the factual allegations in the complaint support this assertion. The face of the complaint demonstrates that Suttell responded to Story's dispute four days after it was sent and ceased all collection activities, including dismissing its lawsuit against her, upon confirming Story's identity-theft allegation. Thus, even if attempting to collect a debt that the debt collector knows or should know is not the consumer's violates one or more of the FDCPA provisions cited in Story's complaint, Story's claims against Suttell on that basis nevertheless would fail.

Story's Response to Suttell's Motion for Judgment on the Pleadings claims that Suttell should have known that the debt was not Story's when it obtained the account because Story had "engaged in some sort of dispute with MCM in January of 2013, a year before Suttell started collecting on the account." (Pl.'s Resp. 2.) The court may not consider this allegation or the documents attached to the Story's Response because the court's review is limited to the pleadings and any documents referenced therein. *Schwartz*, 476 F.3d at 763.

//

> **B.**    *The FDCPA did not prohibit Suttell from requesting that Story provide information to support her allegations of identity theft.*

The claim alleged in ¶ 30 of Story's complaint is predicated on Story's assertion that Suttell's investigation of her dispute unreasonably "put the burden" on Story to substantiate her identity-theft claim.    Story provides no authority for the proposition that Suttell had an independent obligation to verify the debt after it received belated notice of her dispute.    To the contrary, § 1692g(a)(3) expressly allows debt collectors to assume the validity of a debt after the expiration of thirty-day validation period.    The FDCPA similarly does not prohibit debt collectors from requesting that consumers support their claims of identity theft with notarized affidavits or police reports and, as explained fully below, multiple courts have held that such requests are permissible under the FDCPA.    Accordingly, Suttell's Motion for Judgment on the Pleadings is granted as to the claims contained in ¶ 30 of Story's Complaint.

As explained above, if a consumer does not dispute her debt within the thirty-day validation period, the FDCPA expressly permits a debt collector to assume the debt is valid.    15 U.S.C. § 1692g(a)(3); *Mahon*, 171 F.3d at 1202.    Moreover, the FDCPA contains only one debt verification requirement, and that requirement applies only if the consumer disputes the debt within thirty days of the initial communication.    Accordingly, a debt collector is not required to verify a debt when the consumer challenges its validity after the expiration of the initial thirty-day period.    *See, e.g.*, *McCammon v. Bibler, Newman & Reynolds, P.A.*, 515 F. Supp. 2d 1220, 1225-26 (D. Kan. 2007) (denying plaintiff's summary judgment motion on a claim that defendants violated the FDCPA by failing to investigate the debt because defendants presented evidence suggesting plaintiffs did not request debt verification within the thirty-day period prescribed in § 1692g).

In *Mahon*, the Ninth Circuit held that the consumers' "tardy request for verification of the debt . . . did not trigger any obligation on the part of the [debt collector] to verify the debt." 171 F.3d at 1203. The debt collector in that case sent several collection notices to the consumers in compliance with § 1692g(a) and, after receiving no response for three months, reported the debt to the major credit-reporting agencies. *Id.* at 1199. After learning that their account had been reported as delinquent, the consumers wrote to the debt collector, demanding verification of the debt. *Id.* The debt collector responded to this request by confirming the amount of the debt with the original creditor. *Id.* at 1199-1200. Apparently unsatisfied with this response, the consumer filed suit under § 1692g(b), alleging that the debt collector had failed to adequately verify the debt. *Id.* at 1200.

The Ninth Circuit rejected that argument and affirmed the district court's grant of summary judgment in favor of the debt collectors, emphasizing that the consumers did not request verification of the debt until almost nine months after receiving the initial notification of the debt. *Id.* at 1202-03. The court explained that the consumers' verification request would have been effective only if "it had to be made within thirty days from the date they received the Notice from the [debt collectors]." *Id.* (citing 15 U.S.C. § 1692g(a)(3)). That conclusion applies here as well: Suttell would have been obligated to verify the debt if Story had disputed it within thirty days of Suttell's initial communication. Because Story did not dispute the debt within that period, she was not entitled to verification.

Even if Suttell had an obligation to verify the debt after learning of Story's dispute, such verification would not have required an independent investigation into the validity of the debt. As the Ninth Circuit has explained, "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming

is owed." *Clark*, 460 F.3d at 1174 (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)); *see also Hooper v. Capital Credit & Collection Servs., Inc.*, 3:03-cv-00793-PA, 2004 WL 825619, at \*5 (D. Or. Apr. 13, 2004) ("A debt collector is not ordinarily required to independently investigate an alleged debt, but instead is generally entitled to rely on the creditor's representation that the debt is valid.").

Story again challenges Suttell's reliance on § 1692g cases by arguing that Story's dispute triggered a duty to independently verify Story's identity-theft claim pursuant to §§ 1692e, 1692d, and 1692f, not § 1692g. She cites *McCollough v. Johnson, Rodenberg & Lauinger*, 610 F. Supp. 2d 1247 (D. Mont. 2009), *aff'd* 637 F.3d 939 (9th Cir. 2009), apparently in support of her argument that "put[ting] the burden on" Story to substantiate the debt violated §§ 1692d, 1692e, and 1692f. (*See* Pl.'s Resp. 4.) *McCollough* is inapplicable to this dispute. In that case, the debt collector used a request for admission to ask the consumer to admit false information in an attempt to "use the power of the judicial process against a pro se defendant to collect a time-barred debt." 610 F. Supp. 2d at 1256. Here, Suttell asked Story to substantiate her identity-theft claim by filling out an FTC-created form and obtaining a $10 dollar police report.

The conduct in this case is unlike that in *McCollough* or what is prohibited by §§ 1692d, 1692e, and 1692f. In fact, multiple courts have held that requesting information to substantiate a dispute is permissible under the FDCPA. *See, e.g.*, *Garcia*, 2013 WL 4478919; *Collins*, 2010 WL 3245072. Indeed, Suttell voluntarily dismissed its suit against Story as soon as Story supported her claim. Nothing in §§ 1692d, 1692e, and 1692f supports Story's claim that Suttell's request for substantiation of Story's identity theft claim violated any provision of the of the FDCPA. In short, asking Story to substantiate her identity-theft claim did not: (1) "harass,

oppress, or abuse" her; (2) involve "any false, deceptive, or misleading representation"; or (3) use any "unfair or unconscionable means to collect or attempt to collect [the] debt."

      *C.*     *Leave to Amend*

     A party may amend a pleading once as a matter of course before being served with a responsive pleading or within 20 days after serving the pleading. FED. R. CIV. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend is within the trial court's discretion, but such discretion "should be guided by the underlying purpose of Rule 15(a) which was to facilitate decisions on the merits, rather than on technicalities or pleadings." *In re Morris*, 363 F.3d 891, 894 (9th Cir. 2004) (citation omitted). A district court may consider "such factors as bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." *Id.* (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). "Futility alone can justify the denial of a motion to amend." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

     To the extent that Story seeks leave to amend her Complaint to add the allegation that Story "engaged in some sort of dispute with MCM . . . a year before Suttell started collecting on the account," to support her §§ 1692d, 1692e, or 1692f claims, the court denies that request. Such an amendment would be futile. Even if an amendment could establish that Suttell knew the account was disputed, it would not save Story's complaint against Suttell from judgment on the pleadings. As explained fully above, Suttell has provided no support for her allegation that a debt collector who "knows or should know" that an account is disputed may not notify the consumer of such debt in compliance with § 1692g, attempt to settle an account, or verify a

consumer's identity-theft allegations.  In short, Story failed to state a claim under §§ 1692d, 1692e, or 1692f, and amending the complaint to include allegations related to Suttell's knowledge of Story's dispute would be a futile attempt to breathe life into Story's claims under those provisions.  Accordingly, the court denies Story's request for leave to amend under §§ 1692d, 1692e, or 1692f.  The court will, however, permit Story to amend her complaint to include claims under other FDCPA provisions that might apply.

III.     The Midland Defendants' Joinder in Suttell's 12(c) Motion

The court denies the Midland Defendants' motion for judgment on the pleadings because the foregoing analysis and the arguments contained in Suttell's briefing do not apply to the Midland Defendants.  The conduct that forms the basis for Story's complaint against the Midland Defendants began after Story substantiated her identity-theft claim and Suttell dismissed its lawsuit against her.  As a result, the foregoing analysis does not dispose of Count Two against the Midland Defendants, even though that Count is based on the same statutes and similar allegations as Story's first claim against Suttell.  Similarly, the analysis in the foregoing sections of this opinion has no application to Count Three because that Count is based on unrelated conduct.  As a result, Story's claims against the Midland Defendants remain in tact.

*Conclusion*

For the reasons stated above, Suttell's Motion for Judgment on the Pleadings (Dkt. No. 10) is GRANTED.  The court DENIES Story's request for leave to amend her §§ 1692d, 1692e,

\\\\\

\\\\\

\\\\\

\\\\\

or 1692f claims but will GRANT leave to amend to include claims under other applicable FDCPA provisions.

IT IS SO ORDERED.

DATED this 2nd day of December, 2015.


                                                              /s/ John V. Acosta
                                                        JOHN V. ACOSTA
                                                  United States Magistrate Judge